IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 09-cv-2406-RBJ-MJW

JOSHUA ARMBECK, on behalf of KENNETH ARMBECK, *deceased*,

    Intervenor Plaintiff,

v.

CITY AND COUNTY OF DENVER, et al,

    Defendants.

---

## ORDER

---

The case is before the Court on defendants' motion for summary judgment [docket #75] and plaintiff's motion in limine [#119]. The motion for summary judgment has been fully briefed. Neither party has requested oral argument, and the Court finds that it can address the issues on the briefs.

**Case History**

Kenneth Armbeck, representing himself *pro se,* filed this case on October 6, 2009. Complaint [#3]. He was at that time an inmate in the Colorado Department of Corrections. He alleged that the City and County of Denver, acting through the Denver Police Department and several police officers, had violated his constitutional rights by using excessive force when he was arrested on October 20, 2007. He asserted one claim of unreasonable search and seizure in violation of the Fourth Amendment and sought declaratory relief stating that his civil rights had been violated; injunctive relief ordering training and supervision to prevent future use of excessive force by the Denver Police Department; and compensatory and punitive damages.

Defendants filed their Answer to the Complaint on February 10, 2010. Thereafter there was a lengthy period of pretrial skirmishing, during which the case was reassigned to different judges twice.

On August 1, 2011 defendants filed a motion for summary judgment [#75]. Mr. Armbeck responded on August 26, 2011[#80]. Defendants replied on September 26, 2011 [#84], thus making the motion ripe for review and decision on the same day the case was reassigned to this Court. On October 24, 2011 Mr. Armbeck filed a "surreply" without the Court's permission. [#88].

Just over a month later, on November 29, 2011, Mr. Armbeck passed away. There followed a period of time during which the Court was attempting to determine whether next of kin would file a motion for substitution of parties pursuant to Fed. R. Civ. P. 25(a)(1). Mr. Armbeck's son Joshua ultimately filed a timely motion for substitution of parties on July 30, 2012 [#100] and also filed a motion to intervene on the same date [#99]. The Court granted those motions but ordered that Joshua Armbeck (hereafter "Joshua" to avoid confusion with the original Mr. Armbeck) file a response to the motion for summary judgment by August 20, 2012. That was a mistake, because the motion for summary judgment was already fully briefed. Joshua did not file a response to the motion for summary judgment, and on August 27, 2012 the Court dismissed the case without prejudice for failure to prosecute. That too was a mistake. The Clerk entered final judgment on August 28, 2012, reflecting the Court's order.

Joshua, representing himself *pro se,* filed a "motion to reconsider" [#105] and a "motion to re-open" [#106 and "107]. Shortly thereafter he filed a notice of appeal [#108]. The Tenth Circuit abated briefing pending this Court's disposition of the motion for reconsideration [#111]. That brought this case back to my attention, and upon reviewing the file, I realized that my

2

previous order dismissing the case had been mistaken. Accordingly, I granted the motion to reconsider. *See* Order of October 23, 2012. [#116]. In that order I also indicated that I would address the summary judgment motion on the existing briefs, including the surreply, and that no additional briefing was necessary or would be permitted. *Id.* at 3-4.

In light of the order granting reconsideration, the Tenth Circuit dismissed the pending appeal on October 24, 2012. [#119]. Shortly thereafter, despite this Court's order that it would not receive additional briefing, Joshua filed an "Opposition to Summary Judgment/Motion in limine (inclusion)/Motion to strike." [#119]. This amounts to another brief in opposition to summary judgment.

**Facts**

According to affidavits submitted by Officers John Sampson and Philip Jackson of the Denver Police Department [#75-1 and 75-2], the two officers were dispatched to the site of a reported assault on a female by a female. Upon arrival the alleged victim informed them that the assailant was in a vehicle just then departing. The two officers stopped the vehicle, and a female occupant was arrested after the victim identified her as the assailant.

Officer Sampson then observed what he believed to be a hypodermic syringe with a baggie of cocaine near the feet of a back seat passenger, later identified as Kenneth Armbeck. Mr. Armbeck admitted that these items were his. Mr. Armbeck resisted arrest by straightening his arm and pulling away while Officer Jackson was attempting to put him in handcuffs. The officers placed Mr. Armbeck in a "twist lock" in which they took control of Mr. Armbeck's hands behind his back, rotated his fingers upward, and twisted his wrists. They then took him to the ground and handcuffed him.

Officer Sampson's contemporaneous "Use of Force" report [#75-1 at 10-11] states that Mr. Armbeck initially apologized for resisting but a couple of minutes later stated that he had been beaten and was suffering from head and neck pain. [#75-1 at 11. Officer Brian Mudloff arrived at the scene after Mr. Armbeck was in custody. Mudloff Aff. [#75-3]. He did not use any force on Mr. Armbeck. Officer Mudloff states that Mr. Armbeck complained of head and neck pain, and an ambulance was summoned. While Mr. Armbeck was in the patrol car the three officers, according to their affidavits, observed Mr. Armbeck to be hitting his head on the bars and the Plexiglas of the cage in the patrol car. This, they say, resulted in a laceration to his forehead. Paramedic Ownbey, who arrived in the ambulance, heard loud banging in Officer Jackson's patrol car. Ownbey Statement [#75-2] at 6. While he was attending to "a small cut" on Mr. Armbeck's head, Mr. Armbeck stated that "we caused the injury to him and that we better let him go." *Id.* Paramedic Gilles heard Mr. Armbeck state, "I have a curse on you," and observed that he was hitting his head into the rear passenger window and the cage in the patrol car. Gilles Statement [#75-2] at 7. According to Mr. Gilles, when the officers were assisting the paramedics in moving Mr. Armbeck from the patrol car to the ambulance, Mr. Armbeck "kept saying to Officer Jackson, 'Nigger, I got you,' and kept calling other officers 'Pigs.'" *Id.* Paramedic Gilles further stated that Mr. Armbeck was uncooperative, refused to answer questions, and accused the paramedics of beating him as well. *Id.*

Medical records show that Mr. Armbeck was seen at the Denver Health Medical Center, complaining of spine pain and headache [#75-4]. On initial presentation he was described as uncooperative with an odor of alcohol on his breath, in minimal distress, handcuffed, awake and alert. *Id.* at 3. All body locations were found to be normal on objective examination except a one-inch laceration on his head with a severity impression "mild." *Id.* X-rays of his spine

showed disc degeneration at C5/6, minimal subluxation, appropriate alignment of the facet joints, multilevel facet degenerative change, and no fracture. *Id.* at 2. He was discharged in "good" condition after his laceration was sutured and he had received pain medication and instructions concerning alcohol ("please stop drinking"), closed head injury and wound care. *Id.*. *Id.* at 5-6.

In his response to the motion for summary judgment [#80] Mr. Armbeck lists his responses to the "Movant's Statement of Material Facts," which was a 24-paragraph portion of the defendants' motion listing facts impliedly established as undisputed by the affidavits and other materials submitted with the motion Mr. Armbeck stated that he agrees with some, agrees partially with others, and disagrees with still others. In particular he states that he agrees that Denver Police Sergeant Rudolph Suniga arrived at the scene to investigate the use of force; that he told Sgt. Suniga that he had been severely beaten; that Sgt. Suniga observed only a small laceration on Mr. Armbeck's right temple; and that Mr. Armbeck told Sgt. Suniga that he would "let the entire thing go if you let my girlfriend go." *Id.* at 1, response to defendants' statement of facts ¶12. He also agreed that the officers observed him hitting his head on the bars and Plexiglas of the cage of the patrol car, which caused a laceration to his forehead. *Id.,* response to ¶14.

However, in his own listing of what he considers to be the facts, Mr. Armbeck states that the officers used excessive force and caused him serious bodily injury. *Id.* at 1, plaintiff's "Argument & Facts" ¶¶1, 2. He further states that the Denver Police Department had used excessive force against him when they arrested him on January 8, 1997, and that this is ongoing pattern of which the Denver Police Department is aware. *Id.* ¶¶3, 4. He states that he suffered

from the laceration, neck, head, back and left knee pain, and that pain and loss of mobility were continuing. *Id.* ¶¶7, 8.

Mr. Armbeck's two-page response generated 12-page reply by the defendants. [#84]. Defendants argue that Mr. Armbeck's admissions show that there is no genuine dispute of material fact. Further, to the extent that Mr. Armbeck did dispute defendants' statement of material facts, the defendants note that he did not provide any affidavits, depositions, documents or other materials that support him. Beyond that, the reply largely repeats the legal arguments presented in the original motion.

In his surreply [#88] Mr. Armbeck refers to a "sworn affidavit of Miss Lucero" (another passenger in the car in which he was riding when this incident began). However, he does not provide such an affidavit. Mr. Armbeck then relates his version of what occurred on October 20, 2007. *Id.* at 2-3. He states that Officer Jackson twisted his arm behind his back; that Officer Sampson grabbed his right should and arm and began to push him towards Officer Sampson's patrol car; that both officers punched him in the head and body; that Officer Sampson struck him on the right temple with his flash light; that both officers then tackled him to the ground; that both officers then kicked him while he was down; that EMT Zepp joined in on the abuse while he was in custody; and that Mr. Armbeck had been traumatized twice by the Denver Police Department, once in 1997, and again during the subject incident. *Id.* at 2-3.

**Standard of Review**

A court may grant summary judgment only if the moving party demonstrates that there is no genuine dispute regarding any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court considers the pleadings and other materials of record as well as the applicable law. *See Utah Lighthouse Ministry v. Found. for Apologetic*

6

*Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008). The Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party, without weighing the evidence or making credibility determinations. *Id.* In short, the moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If such a showing is made, the non-moving party must come forward with information that shows that there is a genuine dispute of fact that requires a trial to resolve. *Id.* at 324. He "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

### Conclusions

The use of excessive force while making an arrest deprives a citizen of his Fourth Amendment right to be secure against an unreasonable seizure. *See, e.g., Graham v. Connor,* 490 U.S. 386, 394 (1989). Whether excessive force was used is governed by an "objective reasonableness" standard. *Cavanaugh v. Woods Cross City,* 625 F.3d 661, 664 (10th Cir. 2011). The reasonableness is to be judged from the perspective of a reasonable officer, taking into consideration such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396.

In their motion for summary judgment [#75] defendants argue that it is beyond dispute that Officers Sampson and Jackson's actions were objectively reasonable, and that Officer Mudloff used no force at all. *Id.* at 8-9. They further argue that there is no evidence that Officer Mudloff observed the other officers' using excessive force and had a realistic opportunity to

intervene and stop it but failed to do so. *Id.* at 9-10.  But, defendants argue, even assuming that any officer used excessive force or that Officer Mudloff failed to intervene, the officers are entitled to qualified immunity, because they did not violate clearly established law. *Id.* at 10-11. Defendants next argue that, to the extent Mr. Armbeck might be claiming that he unconstitutionally denied medical care, the three officers are entitled to qualified immunity as to that. *Id.* at 11-12.  Defendants argue that Gerald Whitman, then the Chief of Police; Al LaCabe, then the Manager of Safety; and John Hickenlooper, then the Mayor of Denver; are also entitled to qualified immunity. *Id.* at 12-14.  Finally, with respect to the "Monell claim," defendants argue that the City and County of Denver, and the individual defendants to the extent they were sued in their individual capacities, are entitled to judgment in their favor, because it has not been shown that there was a municipal custom, practice or policy of using or permitting excessive force by Denver police officers. *Id.* at 14-16.

The Court finds that Mr. Armbeck did present anything that shows that there is a genuine issue of material fact concerning any use of force by Office Mudloff or any failure by Officer Mudloff to intervene in the alleged use of force by Officers Sampson and Jackson.  The Court finds that Mr. Armbeck likewise has presented nothing that shows that there is a genuine issue of material fact as to either the involvement of defendants Whitman, LaCabe or Hickenlooper, or the existence of a municipal policy, practice or custom of either using, tolerating or failure to investigate the alleged excessive use of force during the execution of an arrest or denying necessary medical care to an arrested person.  Accordingly, the claims against those defendants must be dismissed.

With respect to Officers Sampson and Jackson, defendants have come forward with affidavits that, on their face, tend to show that the force used was a reasonable response to Mr.

Armbeck's lack of cooperation and resistance to arrest. Their affidavits also tend to show that Mr. Armbeck sustained a "small laceration" by banging his head against the interior window and cage in Officer Jackson's patrol car. Defendants have also produced statements of two paramedics who confirmed hearing and seeing Mr. Armbeck's actions inside the patrol car, and who indicate that Mr. Armbeck was uncooperative with them and accused them, impliedly falsely, of participating in the police officers' use of excessive force. Finally, defendants have produced medical records that tend to show that on arrival at the Denver Health Medical Center Mr. Armbeck was uncooperative; that he had an odor of alcohol; that on physical examination he was found to be essentially normal except for a one-inch laceration, which was sutured; that spinal x-rays disclosed no traumatic injury; and that he was released in "good" condition with instructions on wound care, care of the alleged closed head injury, and an instruction to quit drinking.

Mr. Armbeck admitted that Sgt. Suniga observed only a small laceration on his right temple; that he offered to "forget the entire thing" if the Sergeant would let his girlfriend go; that that Officers Jackson, Sampson and Mudloff observed him hitting his head on the bars and Plexiglas of the cage in the patrol car, and that his caused the laceration. Those admissions together with the medical records by themselves raise serious doubt as to whether there is a genuine dispute of material fact concerning the use of excessive force by either Officer Sampson or Officer Jackson. Likewise, the affidavits of the paramedics, particularly concerning Mr. Armbeck's having accused them of participating in the "beating," raise serious doubts. There is absolutely no evidence that the paramedics used any force on Mr. Armbeck other than what was necessary to place him in the ambulance and transport him to the hospital.

Even more basically, however, Mr. Armbeck produced no evidence at all, other than his own statements, that would support a claim of excessive force. He referred to an affidavit of a Miss Lucero, but no such affidavit was produced. I grant that the Court must construe Mr. Armbeck's pleadings liberally in his favor, especially because he represented himself *pro se*. Thus, the Court could construe his statements of fact in his response and surreply as the equivalent of an affidavit. Even so, and even if I otherwise could construe his largely conclusory statements as suggesting a fact dispute, there is a second problem. Because of his unfortunate death, Mr. Armbeck will not be available to testify at a trial. His assertions of fact as set forth in his briefs are not admissible evidence. Because Mr. Armbeck provided absolutely no other evidence, the result is that the plaintiff has come forward with no admissible evidence that, even construed in plaintiff's favor, shows that there is a genuine dispute of material fact regarding the use of excessive force against Mr. Armbeck.

Even though the Court expressly advised Joshua Armbeck that it would decide the motion for summary judgment on the motion and briefing that was completed before Mr. Armbeck died, and that it therefore would not consider any further briefing from Joshua, I have read what I will call Joshua's supplemental brief [#119]. Joshua does not, of course, have any personal knowledge of what occurred. He refers to the "eyewitness testimony of Anna Lucero," *id.* at 2, but once again, no affidavit or deposition testimony or other proof of whatever she might say has been provided.

**Order**

1. For the foregoing reasons, the Court finds that there is no genuine dispute of material fact concerning whether Officer Sampson or Officer Jackson used excessive force in violation of the Fourth Amendment.

2. Motion #75 is GRANTED.

3. Motion #119 is DENIED.

4. This civil action is dismissed with prejudice.

5. As the prevailing parties, defendants are awarded their costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1, if they choose to pursue them.

DATED this 14th day of January, 2013.

                    BY THE COURT:

                    _____
                    R. Brooke Jackson
                    United States District Judge